Thank you, Your Honor. My name is Gerald Smith. I represent the defendant appellant, Mr. Hermoso-Garcia. Good morning, Mr. Smith. I want to save about two minutes of my time for rebuttal, and I want to focus primarily on what I think is the main issue, and probably the positive issue in this case, which is the admission of the CNR, the Certificate of Non-Existence of Record. And you understand that the time shown on the clock is the entire time, so if you want to reserve it, you'll have to sit down before it ends. I understand that, Your Honor. Thank you. There are several cases cited in the briefs, both the ones that I submitted and the ones that Mr. Eckstrom submitted on behalf of the government, that clearly hold that the CNRs are testimonial and therefore violate the Confrontation Clause if admitted through a non-certifying witness. The cases that are cited all found it was harmless error, various reasons for the harmless error. In Orozco, Acosta, for example, the defendant made a sworn statement prior to trial that he did not have permission to reenter the country. The agent that testified there reviewed the claims database, which is one of the databases that is used by a person who does the investigation for the CNR. And finally was the circumstances of his arrest. He was located not at a port of entry, but in a desolate area, inhospitable, far from a port of entry. The same is true in the Valdez-Mendez case. The testifying agent there had also conducted the review of the claims and the CIS databases. Those are, again, two of the databases that are used in order to produce the CNR. Well, help me. Who gave the testimony? The testimony in this case was given by Agent Rodriguez. Did he have a chance to go through the records? He reviewed the A file.  He reviewed the claims database, the CIS, or a third database that is often used. I believe it's the DACS, the Portable Alien Control System. The CNR was signed by Keith Brown, who did not testify. I'm not sure. I'm speaking for recall here. I think he had either retired or moved to another office or something, but was not available. Not available. And the person who did testify had gone through the entire alien file. Went through the alien file, the A file. So what is left here that is harmful to you, that might be prejudicial? The A file is an incomplete record by the agent's own testimony. The agent testified that often there are duplicate A files, that a person may have two separate A files with some documents in one and some in another, that documents do not always get filed. The reason for maintaining these other databases and for producing the CNR is the fact that the A file is insufficient in itself to establish the element of the offense that the person did not have permission to reenter the country. Did he testify that there was no evidence in any other file? He testified only with respect to the A file. And he was cross-examined? He was cross-examined. And the jury heard everything? Yes. Well, then where is the prejudicial hearsay that came in? It's the A files? No, it's the CNR itself, which is up until this court decided Roscoe Acosta, that had been standard operating procedure in illegal reentry cases, is that the proof of not having permission to reenter was established through the CNR. And that is still the case if it is properly documented and if the testifying witness is the one that performed the record. Well, I'm sorry, I don't mean to belabor this, what I'm trying to understand is what was covered by the CNR that was not covered, the kinds of documents by the testimony, that might have been prejudicial? Well, the CNR states that the officer who conducted the search, either himself or an employee acting under his direction, went through the various databases, the Deportable Alien Control System, the Computer Link Application Information Management System, and the Central Index System. That, of course, is not in the A file. This document is what was used to prove that the defendant did not have permission to return to the country. This is in violation of the Confrontation Clause. Certainly the agent who testified who said, we've got this CNR, was cross-examined. But the real witness, Officer Brown, who did or supervised the search, was not available for cross-examination. This was brought up before trial, at trial, and after trial, essentially. I think, as far as the CNR, that covers what I had to say. Just very briefly, one other issue we had was acceptance of responsibility. And, of course, if the court vacates the conviction, that will not come into play. But on the acceptance of responsibility, the reason for going to trial was because of the dispute over the admissibility of the evidence. The defendant did state his sentencing, that he came back to the United States, he knew it was wrong. That is much more than people normally say at a guilty plea, in order to get acceptance of responsibility. He did say, perhaps much more honestly than people who plead guilty, I have family here, I have kids here, they're very important to me. If an emergency arises, I may come back again. Acceptance of responsibility in the guidelines is acceptance for the commission of the offense. I don't think any of us can promise that from this day forward, we're not going to do anything wrong. Certainly we will work to that, but the promise of not ever doing anything again is not part of the acceptance of responsibility. But accepting the offense, doesn't that mean that he admits that he's come back without permission, which he did not do? That was the sentencing well after the jury found the defendant guilty. It has nothing to do with the... No, but normally doesn't someone have to accept responsibility before they force the government to go to trial? I know there are cases, like for example, where someone agrees they did conduct, but claims they have a legal defense like entrapment, and they can get acceptance of responsibility. But I don't really quite understand how an appellant here gets acceptance of responsibility when he did not agree that he came back unlawfully. Your Honor, it's our position that the reason he did not take the plea is because of the dispute over the evidence, which the government was steadfast in. It was granted at trial. Taking the plea would have foreclosed that argument for him. Well, I think we understand. And I am nearly at the end of my time. Yeah, I think you understand the problem with his acceptance. Thank you. We'll hear from the government. Good morning. May it please the Court, Alexander Eckstrom, Assistant United States Attorney, on behalf of the appellee, United States of America. Good morning. Your Honor, dealing with the CNR, while it was fine at the time under Cervantes-Torres, the law has changed. However, the government believes that a review of the record shows that the Court can sustain the conviction on one of two grounds, either that Deportation Officer Rodriguez was a proper witness, or that if there was a violation, that the error was harmless. First, dealing with Special Agent Tillett, whose testimony is an excerpt of Record 110-129, he indicates at 111 that he had contact with the defendant, and then later at 121-122, he indicates further that as he's conducting this interview, he has in front of him both the CIS and the claims database printouts. There's testimony that that information is further given to Deportation Officer Rodriguez finds its way into the A file. Deportation Officer Rodriguez's testimony begins with the discussion of the contents of the A file at Excerpt of Record 131. He indicates at 132 that there's only one A number for this defendant, and indicates at 135 that that file is in the courtroom. He indicates it's on the table behind the AUSA. But particularly important, the government believes, is the discussion at Excerpt of Record 176-77, where he's discussing Exhibit 15, the CNR. He indicates, and these are his words, I requested it, and it's requested through our agency, that we do all our checks to verify that there isn't no application pending for citizenship. That's my job. My supervisor will verify it afterwards and sign off on it to make sure that there is no, to double check, no application. Before we deport him, remove him. He then goes on to indicate that he has personally reviewed the A file, and it shows no evidence of an application for readmission. The government believes. Is the record clear that it would have been in the A file if there had been one? I'm sorry. Is the record clear that there would have been an application in the A file if there had been one? Yes.  Now he indicates that that would include an application. So the government believes that there are two ways that the court can sustain this action by the district court. First is under the same rationale of the unpublished opinion, Villicana-Ochoa, where the sponsoring witness did not perform the search but described the process and certified the result, that person being a supervisor, or being in the position of Mr. Brown in this case. However, in this case we have the inverse. The government would submit that the testimony at 176 through 77 shows that what we're dealing with is the person who does the work that is later certified, and that that would make him a proper sponsoring witness and create no error. Should the court disagree, the government would believe that the admission would be harmless under both Orozco-Acosta and under Valdivino-Mendez. On that theory, would it have to be harmless beyond a reasonable doubt? It would, Your Honor. And under that analysis, the government believes that here we have Special Agent Tillett talking about how those databases were run. We have Deportation Officer Rodriguez talking about the contents, presence, search of the A file, and that he's performing these checks. By context, these have to be the same checks that the defendant complains of, the claims, the CIS, the DACS. So the government would assert, even under that analysis, that it's harmless beyond a reasonable doubt. If I may address then the issue of acceptance of responsibility, the government believes that the answer to the inquiry is at evidence of Record 80 in the district court judge's comments regarding acceptance of responsibility. Well, he indicates that the responsibility is ambiguous. The district court makes clear that the defendant is not being punished for taking the matter to trial. And that conclusion by the district court is based not only on the allocution but also on the PSIR. And again, as the record reveals, there are three prior deportations, three 205s, and the defendant tellingly says, I made three mistakes and I may make another one. He's in essence, as I read that, are you saying that he in essence was saying, it's really okay for me to come back because my children are here and I'll do it again? My view is you can read it that way. The district court judge would have been entitled to read it that way and read the idea of another mistake being a fourth return. And the district court has some discretion, I take it, in giving acceptance? The district court does a clear error review and the comment note 5 indicates that great deference is given to that factual determination. I have nothing further unless the court has questions of me. I have no questions. I'm clear to be any. Thank you. Thank you. Very briefly, by necessity since my time is almost up, the testifying agent did not review the databases for this case. He talked about the databases. I believe there's testimony that he had done it in other cases. The fact is the CNR was produced and signed by Agent Brown. There is nothing in the record that would justify a harmless error finding such as was the case in the other cases. There's no admissions. There's nothing to indicate. There were several records of prior convictions and that brings up the problem and the tension between a situation where it's here, a specific prior conviction as an element of the offense, and the rules of evidence which say you can't rely on prior bad acts, you can't present that as proof that a person did it again. My time is up. Thank you, Your Honor. Thank you, Counsel. The case just argued, United States v. Hermosa Garcia, is submitted.
judges: Schroeder, Alarcon, Gould